UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
DWIGHT A. WILLIAMS and
PATRICIA CLARKE,

        Plaintiffs,

                           **MEMORANDUM AND ORDER**

    - against -                 14-CV-7427 (KAM)(LB)

BAYVIEW LOAN SERVICING, LLC and
KNUCKLES, KOMOSINSKI & ELLIOTT, LLP,

        Defendants.
----------------------------------------x
**MATSUMOTO, United States District Judge:**

        Pro se plaintiffs Dwight A. Williams and Patricia Clarke ("plaintiffs") brought this suit against Bayview Loan Servicing, LLC ("Bayview") and Knuckles, Komosinski & Elliott, LLP ("Knuckles") (collectively, "defendants"), claiming that these defendants employed abusive debt collection practices while attempting to collect on a purported debt. Both defendants have separately moved to dismiss the complaint pursuant to Fed. R. Civ. P. 8(a)(2) and 12(b)(6). For the reasons set forth below, the court GRANTS in part and DENIES in part Bayview's motion to dismiss and GRANTS Knuckles' motion in its entirety. However, plaintiffs are granted leave to replead.

<u>**BACKGROUND**</u>

        For purposes of deciding the defendants' motions, the court assumes the truth of the following facts alleged in

plaintiffs' amended complaint.[1] On October 17, 2006, Plaintiffs obtained a consolidated mortgage loan from non-party CitiMortgage Inc. ("CitiMortgage"). (*See* ECF No. 9, Amended Complaint ("Am. Compl."), Ex. 8, at 2; Am. Compl. at ¶ 6.) Plaintiffs defaulted on that loan in January 2011. (Am. Compl. at ¶ 6.) CitiMortgage subsequently notified plaintiffs that their allegedly defaulted loan was referred to Knuckles to begin foreclose proceedings. (*Id.*, Ex. 2.) Knuckles thereafter commenced a foreclosure suit on behalf of CitiMortgage in New York state court. (*Id.*, Ex. 1.) On April 23, 2013, however, the foreclosure action was dismissed without prejudice, purportedly for failure to comply with court orders. (*Id.*; Am. Compl. at ¶ 6.)

Approximately three months later, on July 11, 2013, CitiMortgage wrote to plaintiffs, explaining that their "mortgage loan servicing [would] be transferred from CitiMortgage to Bayview Loan Servicing, LLC." (*Id.*, Ex. 3, at 1-2, 5; Am. Compl. at ¶ 7.) Bayview then sought to collect on the debt, sending monthly letters that plaintiffs considered "harassing and threatening." (Am. Compl. at ¶ 9.) Plaintiffs allege that they sought verification of

---

[1] The court's recitation of the facts presumes the veracity of plaintiffs' well-pleaded allegations, as is required on a motion to dismiss. *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) ("On a motion to dismiss . . . we must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." (internal quotation marks and citation omitted)). Additional facts relevant to plaintiffs' specific claims will be provided as needed throughout the court's analysis.

the debt, which Bayview never adequately provided. (*Id.* at ¶¶ 9-10.) Bayview then engaged Knuckles to commence a second foreclosure suit, which Knuckles brought in New York state court (the "Foreclosure Action") on October 23, 2014. (*Id.* at ¶ 13.)

On November 9, 2014, plaintiffs obtained copies of their credit reports from Equifax, Experian and TransUnion and, on November 10, 2014, filed disputes regarding the Bayview mortgage with the credit agencies. (Am. Compl. at ¶ 11.) On December 22, 2014, the three credit agencies reported that after conducting an investigation with Bayview, the agencies determined the debt was valid and still owed by plaintiffs. (*Id.*)

With the Foreclosure Action still pending in state court, plaintiffs — on December 22, 2014 — initiated the instant suit in this court. (*See* ECF No. 1, Complaint.) In this action, plaintiffs claim violations of: (1) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (by Bayview); (2) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (by both Bayview and Knuckles); (3) New York General Business Law § 349 (by both Bayview and Knuckles); and (4) New York's invasion of privacy law (by both Bayview and Knuckles); and further claim that (5) Bayview and Knuckles negligently hired and supervised employees.

Both Bayview and Knuckles have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint and filed memoranda of

law in support of their respective motions. (*See* ECF No. 18, Memorandum of Law of Defendant Knuckles, Komosinski & Elliott, LLP In Support of Its Motion to Dismiss Plaintiffs' Complaint ("Knuckles Br.")[2]; ECF No. 22, Ex. 1, Memorandum of Law In Support of Defendant Bayview Loan Servicing, LLC's Motion to Dismiss the Complaint ("Bayview Br.").) Plaintiffs filed an opposition (ECF No. 19, Memorandum of Law in Opposition to Defendants [sic] Motion to Dismiss ("Pl. Resp.")), to which both defendants have replied. (ECF No. 20, Memorandum of Law of Defendant Knuckles, Komosinski & Elliott, LLP In Further Support of Its Motion to Dismiss & In Reply to Plaintiff's Opposition ("Knuckles Reply"); ECF No. 22, Ex. 4, Reply Memorandum of Law In Further Support of Defendant Bayview Loan Servicing, LLC's Motion to Dismiss the Complaint ("Bayview Reply").)

## DISCUSSION

### I.  *Standard on a Motion to Dismiss*

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As a general rule, the court is required to accept as true all of the allegations contained in the complaint. *See Iqbal,*

---

[2] Knuckles also seeks dismissal of the complaint pursuant to Fed. R. Civ. P. 8(a)(2).

556 U.S. at 678. However, the court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citation omitted).

Because plaintiffs are proceeding pro se, the court must liberally construe their complaint, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and hold their allegations to "less stringent standards than formal pleadings drafted by lawyers." *Id.*

## II. *Prior Pending Action Doctrine*

Bayview contends that it should be dismissed under the prior pending action doctrine because of Bayview's previously filed and ongoing Foreclosure Action in New York state court.[3] The prior pending action doctrine provides that "[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second." *Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986) (internal quotation marks omitted).[4]

---

[3] Knuckles does not join Bayview's argument on this issue, since the law firm is not a party in the Foreclosure Action.

[4] Courts that permit motions to dismiss based on the pendency of a prior action generally require "that an identity of issues exists and the controlling issues in the dismissed action will be determined in the other lawsuit. In most instances the federal judges do not base their power to entertain this type of motion on any specific rule or statute, but . . . speak only of their desire to promote judicial efficiency and to avoid conflicting opinions." 5C Charles Alan Wright & Arthur R.

Significantly, as Bayview's counsel should be aware, courts in this circuit and others have held that the prior pending action doctrine applies only where the relevant actions are both proceeding in federal courts. In *Wenegieme v. Bayview Loan Servicing*, for example, a case involving one of the same defendants in the instant case (as well as the same counsel), a foreclosure action was progressing in Maryland state court. *See* No. 14-CV-9137, 2015 WL 2151822, at *1 (S.D.N.Y. May 7, 2015). The property owner-defendants in the foreclosure action subsequently brought a federal suit in the Southern District of New York to enjoin the state court foreclosure action. *Id.* The federal court in the Southern District of New York determined that the prior pending action doctrine did not preclude the federal suit because the "doctrine is limited to situations where two overlapping lawsuits are both pending in federal court, while the foreclosure action against the [property owners] is taking place in Maryland state court."[5] *Id.* at *3; *see also In re Telluride Global Dev.*, LLC, 380 B.R. 585, 592-93 (B.A.P. 10th Cir. 2007) ("The prior pending action doctrine is based on federal court efficiency and may be applied when two pending *federal* court actions involve the same or similar claims and parties." (citation omitted)); *Bradley v. Kelly*, 479 F.

---

Miller, *Federal Practice and Procedure* § 1360 (3d ed.) (footnotes omitted).

[5] The *Wenegieme* court ultimately dismissed the federal suit on other grounds. *See* 2015 WL 2151822, at *5.

Supp. 2d 281, 284 (D. Conn. 2007) (holding that the prior pending action doctrine "is applicable where there are two related actions contemporaneously proceeding in two federal courts"); *Cupe v. Lantz*, 470 F. Supp. 2d 128, 132 (D. Conn. 2007) (same).

The Second Circuit has not frequently addressed the prior pending action doctrine and does not appear directly to have reached the issue of whether the doctrine applies where one action is in federal court and another is in state court. However, on multiple occasions the court has described the doctrine in a manner that limits its application to circumstances where the relevant suits are both in federal court. *See Ziemba v. Clark*, 167 F. App'x 831, 832 (2d Cir. 2006) ("A district court may stay or dismiss a suit that is duplicative of another federal court suit as part of its general power to administer its docket." (citation omitted)); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."); *Gyadu v. Hartford Ins. Co.*, 133 F.3d 907 (2d Cir. 1998) (unpublished) ("[A] district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court." (internal quotation marks and citation omitted)).

Further, the Supreme Court has explicitly distinguished between concurrent jurisdiction in the state-federal setting and

concurrent jurisdiction between two federal courts. "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (internal quotation marks and citation omitted). However, as between federal district courts, "though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Id.* In light of the aforementioned precedent, the court is satisfied that dismissal under the prior pending action doctrine is not warranted because it is not properly invoked.

Even if the prior pending action doctrine could be invoked in this case, however, there is a more fundamental problem. As noted earlier, application of the doctrine requires an "identity of issues" between the two suits. 5C Wright & Miller § 1360. Plaintiffs in the instant suit, however, are defendants in the Foreclosure Action, and — based on filings in that case — they do not appear to have brought any counterclaims (or even answered the complaint). (*See* ECF No. 22, Ex. 3, Declaration of Jonathan Robbin ("Robbin Decl.").)[6] Put simply, the issues raised by Mr. Williams

---

[6] Bayview argues that a document filed by plaintiffs in the Foreclosure Action — labeled "AFFIDAVIT OF VERIFIED FACTS BY DEFENDANTS IN ERROR" (Am. Compl., Ex. 9) — contains counterclaims that are "closely-related" to the claims in this suit. (Bayview Br. at 5.) But nothing in that document suggests that plaintiffs intended to counterclaim, let alone bring causes of action similar to those at issue in this suit. Instead, as the state court noted (*see* Robbin Decl., Ex. 1, at 2), plaintiffs

and Ms. Clarke in the Foreclosure Action focus on whether Bayview has a right to foreclose on plaintiffs' home. In this action, by contrast, plaintiffs allege violations of the FCRA, FDCPA, and New York state law by Bayview and Knuckles. Even if substantial evidentiary overlap between the two suits is likely, the suits ultimately are independent and not significantly duplicative. Consequently, the court will address the substantive issues presented by defendants' motions to dismiss.

### III. *Fair Credit Reporting Act Claim Against Bayview*

Bayview has moved to dismiss plaintiffs' FCRA claim. (Bayview Br. at 6-8; Bayview Reply at 3-4.) Congress passed the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA provides a private right of action when "furnishers" of credit information, such as lenders, negligently or willfully violate duties regarding disputed debts, as prescribed in 15 U.S.C. § 1681s-2(b). *See Redhead v. Winston & Winston, P.C.*, No. 01-CV-11475, 2002 WL 31106934, at *5 (S.D.N.Y. Sept. 20, 2002).

---

appear to have used the document as a vehicle to argue that Bayview lacked standing or capacity to foreclose. (*See, e.g.*, Am. Compl., Ex. 9 ("BAYVIEW LOAN SERVICING, LLC, a non-bank servicer, is not, nor ever been [sic] a known *creditor* of Defendants in Error, nor one that has ever conducted any consumer transactional business. Therefore, their identity is unknown at this time, and they appear not to be a known party to any transaction that is recalled.").)

Plaintiffs do not specify the particular provision of § 1681s-2 they seek to invoke here. There are two categories of duties prescribed in § 1681s-2. *See Redhead*, 2002 WL 31106934, at *4. The first category, under subsection (a), requires furnishers to provide accurate information. *See* § 1681s-2(a). The second, defined in subsection (b), describes duties triggered when a furnisher receives notice from a consumer reporting agency (a "CRA") — like Experian, TransUnion, or Equifax — that a consumer has disputed some information. *See* § 1681s-2(b).

A.  *§ 1681s-2(a)*

To the extent that plaintiffs' complaint could be read to allege claims for violations of § 1681s-2(a) (*see* Am. Compl. at ¶ 19), those claims fail because there is no private right of action for a violation of § 1681s-2(a). *See* § 1681s-2(d) (providing, in a section labeled "[l]imitation on enforcement," that subsection (a) "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title"); *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) (holding that "there is no private cause of action for violations of § 1681s-2(a)" and collecting cases in accord); *see also Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 445 (2d Cir. 2015) ("Violations of these provisions under 15 U.S.C. § 1681s-2(a) . . . are not enforceable by means of a federal or state cause of action for damages.").

B.    *§ 1681s-2(b)*

On the other hand, most courts to have addressed the issue have held that a private right of action does exist for a violation of § 1681s-2(b). *See Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 305 (E.D.N.Y. 2014) ("Although the Second Circuit has not directly addressed the issue, the majority of courts to address whether a private right of action exists for willful or negligent noncompliance with Section 1681s-2(b) have recognized one."); *see also Chiang v. Verizon New England Inc.*, 595 F.3d 26, 36 (1st Cir. 2010) ("We join the vast majority of courts to have considered this issue in holding that a plain reading of the FCRA's text indicates that a private cause of action exists for individuals seeking remedies for furnishers' violations of § 1681s-2(b)."); *Jonas v. Int'l Airline Emps. F.C.U.*, No. 03-CV-3374, 2006 WL 1409721, at *6 (S.D.N.Y. May 19, 2006) (same).

The statute provides in relevant part the following requirements for a furnisher, like Bayview:

> After receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency . . . ;
>
> (C) report the results of the investigation to the consumer reporting agency;

11

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

    (i) modify that item of information;
    (ii) delete that item of information; or
    (iii) permanently block the reporting of that item of information.

§ 1681s-2(b)(1).

To simplify, after receiving proper notice from a CRA of a dispute, § 1681s-2(b) requires that furnishers of information investigate credit disputes in accordance with the FCRA and attendant regulations. *See Nguyen*, 66 F. Supp. 3d at 304-05; *see also Harrison v. Ford Motor Credit Co.*, No. 03-CV-1291, 2005 WL 15452, at *1 (D. Conn. Jan. 3, 2005) ("[A] violation of § 1681-2(b)(1) . . . requires a furnisher of credit information to a [CRA] to investigate and correct information when notified by a CRA that the information's accuracy or completeness is disputed by the consumer.").

Bayview argues that plaintiffs fail to "allege any facts or provide evidence suggesting that: (i) Plaintiffs ever contacted a credit reporting agency; (ii) a credit reporting agency contacted

Bayview; or (iii) that Bayview failed to reasonably investigate."
(Bayview Br. at 7; *see also* Bayview Reply at 3-4.) Plaintiffs do
not respond directly to these arguments, and instead appear to
contend more generally that Bayview was never properly their
creditor. (*See* Pl. Resp. at 4-5.) The court will take Bayview's
arguments on this issue in turn.

### i. Plaintiffs Sufficiently Allege That They Contacted a Consumer Reporting Agency

First, Bayview erroneously argues, both in it is initial
and reply memoranda, that plaintiffs fail to allege they ever
contacted a consumer reporting agency. (Bayview Br. at 7.) For
liability to attach under § 1681s-2(b), plaintiffs must have
contacted a consumer reporting agency about the disputed
information. *See, e.g.*, *Corcia v. Asset Acceptance, LLC*, No. 13-
CV-6404, 2014 WL 3656049, at *5 (E.D.N.Y. July 22, 2014) ("If a
consumer files a dispute with the agency, both the agency and the
furnisher of that information have a duty to reasonably investigate
and verify that the information is accurate.").[7]

---

[7] It is not sufficient for a furnisher like Bayview to become aware of
the disputed information by other means, such as via direct contact from
a consumer. *See Kinel v. Sherman Acquisition II LP*, No. 05-CV-3456, 2006
WL 5157678, at *15 (S.D.N.Y. Feb. 28, 2006) *report and recommendation
adopted*, 2007 WL 2049566 (S.D.N.Y. July 13, 2007) ("A plaintiff
proceeding under 1681s-2(b) is required to show that the furnisher was
told by a credit reporting agency that the consumer's information was
disputed, as opposed to being told by the consumer directly.").

In this case, contrary to Bayview's contentions, the Amended Complaint explicitly alleges that plaintiffs obtained consumer credit reports from Equifax, Experian, and TransUnion on November 9, 2014. (Am. Compl. at ¶ 11; *see also id.*, Ex. 8 (containing the credit reports).)[8] Plaintiffs allege that, following their receipt of the credit reports, on November 10, 2014, they "filed disputes with the credit agencies pursuant to 15 USC §1681, the FCRA." (Am. Compl. at ¶ 11.) Indeed, one of the attached reports — the Experian report — references a disputed item. (*Id.*, Ex. 8.) Plaintiffs' allegation that they filed disputes with the CRAs is sufficient at this stage, in which the court must take their well-pleaded allegations as true. The allegation provides a specific date and is corroborated by the contemporaneous credit reports attached to the complaint. *See Mendy v. JP Morgan Chase & Co.*, No. 12-CV-8252, 2014 WL 1224549, at *5 (S.D.N.Y. Mar. 24, 2014) (finding sufficient a plaintiff's allegation that he had "filed several disputes with the credit reporting agencies, to have Chase reduce the debt"); *Harrison*, 2005 WL 15452, at *1 (holding that plaintiff's allegation that he "disputed the credit information in question with three CRAs" was sufficient to survive a motion to dismiss based on this issue). Although Bayview protests that plaintiffs have not "provide[d] evidence" of their contact

---

[8] Although the TransUnion and Equifax reports are dated November 9, 2014, the Experian report is dated December 22, 2014. (Am. Compl., Ex. 8.)

with any of the consumer reporting agencies (Bayview Br. at 7; Bayview Reply at 3), that question is better suited for summary judgment or trial.

> ii.  *Plaintiffs Sufficiently Allege That the Consumer Reporting Agencies Contacted Bayview*

Bayview, again mistakenly, argues that plaintiffs fail to allege a consumer reporting agency contacted Bayview. (Bayview Br. at 7.) This, too, is a prerequisite to liability under § 1681s-2(b). *See Algende v. Bay Ridge Fed. Credit Union*, No. 14-CV-2518, 2015 WL 1014217, at *3 (E.D.N.Y. Mar. 9, 2015) ("While alleging that he alerted Experian credit reporting agency of the inaccurate information reported by Defendant, Plaintiff does not allege that Experian informed Defendant of the dispute as is required to trigger Defendant's duties under the FCRA. Plaintiff, therefore, has failed to allege a violation under subsection (b) or any other part of the FCRA."); *Mendy*, 2014 WL 1224549, at *5 ("However, the duty to investigate in Subsection (b) is triggered only after a furnisher of information receives notice from a credit reporting agency of a consumer's dispute. A plaintiff proceeding under 1681s-2(b) is required to show that the furnisher was told by a credit reporting agency that the consumer's information was disputed." (internal quotation marks and citations omitted)); *Campanella v. Solomon & Solomon, P.C.*, No. 10-CV-0037, 2011 WL 940293, at *3 (N.D.N.Y. Mar. 16, 2011) ("Although the complaint alleges that

plaintiff contacted three credit reporting agencies to report a dispute, there is no allegation that defendant received notification of the disputed debt from a credit reporting agency. Thus, the complaint fails to state a plausible claim.").

In the complaint, plaintiffs allege that "[o]n or about December 22, 2014 . . . the three major credit reporting agencies after conducting an investigation with the credit furnisher (defendant debt collector [Bayview]) that the alleged debt was valid, and determined to be owed by Plaintiff(s) [sic]." (Am. Compl. at ¶ 11.) Construed liberally and mindful of the plaintiffs' pro se status, a fair read of this statement — however unclear it may be — is that the consumer reporting agencies directly communicated with Bayview about the disputed debt and determined that plaintiffs owed a valid debt. Additionally, in a different section of their amended complaint, plaintiffs contend that Bayview "received notice from the three major credit reporting agencies Equifax, Experian and Transunion." (*Id*. at ¶ 22.)

Without any discovery, it is uncertain precisely how the plaintiffs — who would not be parties to communications between a consumer reporting agency and Bayview — could have more information about the nature or timing, for example, of that exchange. Plaintiffs allege that the three consumer reporting agencies investigated plaintiffs' disputes "with the credit furnisher (defendant debt collector [Bayview])" (Am. Compl. at ¶ 11), and

thus adequately allege that Bayview received notice from the CRAs that plaintiffs disputed the debt. *See Jenkins v. Chase Bank USA, N.A.*, No. 14-CV-5685, 2015 WL 4988103, at *7 (E.D.N.Y. Aug. 19, 2015) (finding satisfactory an allegation that, "after receiving the 'notice of dispute' from [Equifax/Experian]," defendant continued to report "the false, negative and inaccurate information into the Plaintiff's [Equifax/Experian] report").

> ### iii. *Plaintiffs Sufficiently Allege that Bayview Failed to Investigate*

Defendants' final, and again erroneous, argument on the plaintiffs' FCRA claim is that plaintiffs do not adequately allege that Bayview failed to investigate. (Bayview Br. at 7; Bayview Reply at 3.) After a furnisher is informed by a CRA of a disputed information, the furnisher has a duty to investigate the information, review all relevant information provided by the CRA, and report the results of the investigation to the CRA. *See* § 1681s-2(b)(1)(A)-(C). If the investigation reveals incomplete or inaccurate information, the furnisher must take certain steps to rectify the problem. *Id.* § 1681s-2(b)(1)(D)-(E).

In their complaint, plaintiffs allege that Bayview "failed to maintain, and failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiffs [sic] credit reports, concerning the accounts in question . . . . Plaintiffs allege that [Bayview] failed to conduct a proper and lawful

reinvestigation." (Am. Compl. at ¶ 23.) Plaintiffs also allege that Bayview "failed to delete information found to be inaccurate and erroneous, and or failed to properly investigate Plaintiffs [sic] disputes." (*Id.* at ¶ 22.) Information about the precise nature of the investigation is uniquely in the hands of Bayview. Plaintiffs cannot be expected to have much more information about the reasonableness of the investigation at this stage of the litigation than they have stated in their complaint.

Again affording the pro se plaintiffs' allegations the leniency required in this context, the court concludes that they are sufficient to survive a motion to dismiss. *See Kinel v. Sherman Acquisition II LP*, No. 05-CV-3456, 2006 WL 5157678, at *15 (S.D.N.Y. Feb. 28, 2006) *report and recommendation adopted*, 2007 WL 2049566 (S.D.N.Y. July 13, 2007) ("[Plaintiff] further maintains that the [defendants], either due to their negligent investigation or failure to conduct any investigation whatsoever, verified the information on [plaintiff's] credit reports to the credit reporting agencies as true and accurate, which caused the disputed information to remain on his credit reports. Therefore, [plaintiff] has adequately pled a violation of § 1681s-2(b) by alleging that the [defendants] failed to conduct an appropriate investigation, and verified the reported information regarding the

Debt as correct after they were contacted as part of the consumer reporting agencies' investigations." (citations omitted)).[9]

The Amended Complaint alleges that Bayview improperly sought to collect on a debt and reported the plaintiffs' failure to pay to consumer reporting agencies. Whether Bayview is properly a creditor to plaintiffs is an issue that has not yet been definitively determined, either in the Foreclosure Action or in this court. Taking the allegations in plaintiffs' amended complaint as true, plaintiffs state a claim under the FCRA against Bayview.

## IV. *Fair Debt Collection Practices Act Claims Against Bayview and Knuckles*

Defendants next seek dismissal of plaintiffs' FDCPA claims. The FDCPA prohibits "debt collector[s]" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

---

[9] *See also Jenkins*, 2015 WL 4988103, at *7 (holding that complaint stated a claim where plaintiff alleged that defendant continued to report "the false, negative and inaccurate information into the Plaintiff's [Equifax/Experian] report on the alleged but non-existent debts without conducting proper and reasonable investigations as required by 15 U.S.C. § 1681s-2(b) demonstrat[ing] a willful and knowing disregard for the law or in the alternative negligence of the law"); *Mendy*, 2014 WL 1224549, at *5 (holding that complaint was sufficient where it stated that defendants, "in response to the notices of reinvestigation from the Credit Reporting Agencies, verified that the disputed information was accurate and complete on at least three different occasions" . . . and "[t]he results of the reinvestigation . . . completed by the three credit [reporting agencies] indicated that [defendants] verified to Equifax, Experian and TransUnion that the [information defendants had provided] was complete and accurate").

A threshold question is whether the FDCPA even applies in the foreclosure context — that is, whether foreclosure constitutes "the collection of any debt," an undefined term in the FDCPA. *See Gray v. Four Oak Court Ass'n, Inc.*, 580 F. Supp. 2d 883, 887 (D. Minn. 2008) ("The FDCPA does not define 'the collection of any debt.'"). Bayview argues that "a claim cannot arise under the FDCPA based upon enforcing a security interest because foreclosing on a mortgage does not constitute an attempt to collect a debt for purposes of the FDCPA." (Bayview Br. at 8.) There is considerable ambiguity in the federal courts about the certainty of Bayview's position. *See* Alexandra Vozza, *The FDCPA's Application to the Foreclosure Process*, 24 Loy. Consumer L. Rev. 640, 651-55 (2012) (discussing the split in authority).[10]

---

[10] The Second Circuit has not yet determined whether a foreclosure action is debt collection within the meaning of the FDCPA. Some federal courts of appeal have held that the FDCPA does in fact reach foreclosure. *See Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 464 (6th Cir. 2013) ("[W]e hold that mortgage foreclosure is debt collection under the [FDCPA]."); *Kaltenbach v. Richards*, 464 F.3d 524, 528 (5th Cir. 2006) (holding "that the entire FDCPA can apply to a party whose principal business is enforcing security interests"); *Wilson v. Draper & Goldberg*, 443 F.3d 373, 376 (4th Cir. 2006) ("We hold that Defendants' foreclosure action was an attempt to collect a 'debt' . . . ."). Other courts have held or suggested that foreclosure falls outside the purview of the FDCPA. *See Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 461 (11th Cir. 2009) (holding that "foreclosing on a home is not debt collection for purposes of § 1692g"); *DeMoss v. Peterson, Fram & Bergman*, No. 12-CV-2197, 2013 WL 1881058, at *2 (D. Minn. May 6, 2013) ("[T]his court has previously held that foreclosure activities do not constitute debt collection under the FDCPA."). An appeal currently pending before the Second Circuit may resolve this issue. *See Carlin v. Davidson Fink LLP*, No. 13-CV-6062, 2015 WL 5794250, at *3 (E.D.N.Y. Sept. 30, 2015), *appeal docketed*, No. 15-3105 (2d Cir. Oct. 2, 2015) (appeal pending presenting a dispositive issue of whether foreclosure constitutes debt collection within meaning of FDCPA).

This court, however, has previously held, in the unique context of mandatory municipal tax, water, and sewer obligations, that the foreclosure of tax liens does not constitute debt collection within the meaning of the FDCPA. *See Boyd v. J.E. Robert Co.*, No. 05-CV-2455, 2013 WL 5436969, at *9 (E.D.N.Y. Sept. 27, 2013) ("The court therefore concludes . . . that where, as here, no monetary judgment is sought against a debtor, the enforcement of a security interest through lien foreclosure does not constitute debt collection for purposes of the FDCPA."). For substantially similar reasons, the court concludes that home foreclosure is not debt collection within the meaning of the FDCPA.

Because it appears from the complaint and its attachments that the Knuckles law firm took no part in any debt collection activities beyond pursuing the two foreclosure actions, the FDCPA claim against Knuckles must be dismissed. (*See* Am. Compl. at ¶ 6 (alleging that Knuckles filed the two foreclosure actions, one on behalf of CitiMortgage and a second on behalf of Bayview); *id.*, Ex. 2 (letter from CitiMortgage to plaintiffs stating that since all "reasonable efforts afforded you to cure this default have failed," Citi would refer the loan to Knuckles to "begin foreclosure proceedings"); Knuckles Br. at 9 ("Defendant's participation in the servicing and/or collection of Plaintiff's mortgage loan is limited to the legal actions taken by Defendant

in the State Foreclosure Action.").) Plaintiffs will be granted an opportunity to amend their complaint to add plausible facts suggesting that the actions of the Knuckles firm violated the FDCPA. Specifically, if plaintiffs can plead facts regarding acts by the Knuckles law firm beyond the scope of initiating and prosecuting the foreclosure actions, any amended complaint must contain those allegations.[11]

The court's ruling regarding the Knuckles firm is not dispositive with respect to the plaintiffs' FDCPA allegations against Bayview. Plaintiffs appear to allege that Bayview attempted to collect on the debt *before* electing to pursue foreclosure in the state court. In a letter dated January 13, 2014 (attached to the complaint and labeled "NOTICE OF DEFAULT AND INTENT TO ACCELERATE"), Bayview formally notified plaintiffs that they had defaulted on their home loan. (Am. Compl., Ex. 4; *see also* Am. Compl. at ¶ 8 ("[Bayview] sent Plaintiffs a dunning letter 'Notice of Default and Intent to Accelerate' on their alleged debt that previously had been defaulted by CITIMORTGAGE in January 2011 . . . .").) The letter stated, inter alia: "Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument, foreclosure by

---

[11] The court, however, agrees with plaintiffs that the FDCPA reaches attorneys who regularly engage in consumer debt collection activity, including litigation. *See Heintz v. Jenkins*, 514 U.S. 291, 299 (1995). Knuckles' argument otherwise (*see* Knuckles Br. at 4-5; Knuckles Reply at 1-2) is not well taken.

judicial proceeding where applicable, and sale of the property."
(Am. Compl., Ex. 4.) Bayview's attorneys (Knuckles) did not
initiate the second foreclosure action until October 23, 2014.
(*See* Am. Compl. at ¶ 13; Knuckles Br. at 2; ECF No. 17, Declaration
in Support of Defendant's Motion to Dismiss by Jordan Manfro, Ex.
D.)

The January 13, 2014 letter constitutes an attempt by
Bayview to collect on a debt, notwithstanding that it also advised
plaintiffs of a possible foreclosure proceeding in the future. *See*
*Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211,
1218 (11th Cir. 2012) ("A communication related to debt collection
does not become unrelated to debt collection simply because it
also relates to the enforcement of a security interest. A debt is
still a 'debt' even if it is secured."); *see also Carlin*, 2015 WL
5794250, at *4 (recognizing the distinction between an attempt to
collect on a debt secured by a mortgage and the initiation of
foreclosure proceedings). Although Bayview cannot be liable under
the FDCPA for its actions related exclusively to commencing and
litigating the foreclosure proceeding, plaintiffs may at least
pursue a claim against Bayview based on its other alleged debt
collection activities.[12]

---

[12] The January 13, 2014 letter undercuts Bayview's argument that "all of
the letters that Plaintiffs allege to be in violation of the FDCPA were
sent in furtherance of Bayview's effort to foreclose on the mortgage."
(Bayview Br. at 8.) This letter mentioned the possibility of foreclosure,
but, as noted above, Bayview did not file the foreclosure action until

Bayview next argues that "where a simultaneous foreclosure proceeding exists, the protective purposes of the [FDCPA] typically are not implicated" and that FDCPA claims often fail when a plaintiff's "interests in the property can be, and should be, protected through a foreclosure action." (Bayview Br. at 9 (internal quotation marks and citations omitted).) But the cases Bayview cites — *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89 (2d Cir. 2012), and *Cocco v. Bank of Am. Home Loans*, 2012 U.S. Dist. LEXIS 173663 (N.D.N.Y Dec. 3, 2012) — do not, read in context, support Bayview's broad propositions.

The central FDCPA issue in *Gabriele* concerned an alleged abuse of the judicial system by a defendant: the plaintiff complained, inter alia, that a defendant had violated the FDCPA by prematurely filing, in a state court foreclosure action, "two motions for default and a motion for judgment of strict foreclosure, in violation of procedural rules and deadlines set by the court." 503 F. App'x at 95. The Second Circuit held that "technical falsehoods" like these were "not misleading or

---

over nine months later, on October 23, 2014. Bayview's explanation for this nine-month gap is not before the court in Bayview's motion to dismiss, but explanatory evidence may well be presented in a future summary judgment motion or at trial. The court might take a different view of the matter if Bayview's letter had been sent approximately 90 days before the commencement of the foreclosure proceeding, given that New York law requires a lender or servicer to provide notice (and information about how to cure a default) at least 90 days before initiating foreclosure proceedings on an owner-occupied property. *See* N.Y. Real Prop. Acts Law § 1304.

deceptive as to the nature or legal status" of plaintiff's debt, and consequently these actions did not state a claim for liability under the FDCPA. *Id.* at 95–96. The court then added, as Bayview correctly notes, that "the protective purposes of the FDCPA typically are not implicated 'when a debtor is instead protected by the court system and its officers.'" *Id.* at 96 n.1 (quoting *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010)). "The state court's authority to discipline," the Second Circuit explained, "will usually be sufficient to protect putative-debtors like [the plaintiff] from legitimately abusive or harassing litigation conduct." *Id.*

The *Gabriele* court precluded plaintiffs from bringing FDCPA claims arising from procedural litigation tactics in a state foreclosure proceeding that were only negligibly abusive. Those actions, the *Gabriele* court determined, would be better addressed in the forum in which they were employed.[13] That holding is not applicable here, where plaintiffs can only pursue FDCPA claims

---

[13] This reading is reinforced by the case cited in *Gabriele* for the proposition that the protective purposes of the FDCPA are not implicated where "a debtor is instead protected by the court system and its officers." *Simmons*, 622 F.3d at 96. *Simmons* held that a plaintiff could not pursue an FDCPA claim against a creditor based on the creditor's inflated proof of claim in a bankruptcy proceeding. *Id.* The bankruptcy court, the Second Circuit held, was best suited to address the claim. *Id.* Both the *Simmons* and *Gabriele* courts dealt with arguably abusive tactics employed by creditors in the midst of litigation, and both of these courts refused to permit the debtors in the underlying cases to pursue FDCPA claims in federal courts where the initial state foreclosure or federal bankruptcy court could adequately protect the debtor.

related to the debt collection activities separate from the foreclosure litigation. The alleged FDCPA violations here, unlike those in *Gabriele*, do not concern uncivil procedural litigation tactics in a separate judicial forum. Rather, plaintiffs' FDCPA claims concern the extrajudicial attempts by Bayview to collect on the plaintiffs' home loan. Because those actions did not occur in the foreclosure litigation itself, *Gabriele* is inapposite.

Neither does *Cocco* aid Bayview here. The plaintiffs in that case sought a temporary restraining order in federal court to prevent a bank from foreclosing on their property in state court. *See* 2012 U.S. Dist. LEXIS 173663, at *1. The court refused to issue the injunction in part because the plaintiffs could not show irreparable harm. *Id.* at *3-4. The plaintiffs' interest in the property, the court determined, could be protected in the foreclosure proceeding. *Id.* at *4. The court then quoted from *Gabriele* in stating that the "protective purposes of the FDCPA typically are not implicated when a debtor is instead protected by the court system and its officers." *Id.* (internal quotation marks and citations omitted). The court in *Cocco* marshalled the language from *Gabriele* to explain why a preliminary injunction should not issue to block a foreclosure; the debtors could not show irreparable harm because their interests would be protected in the foreclosure suit. The plaintiffs in the instant case have not

sought an injunction against the state foreclosure proceeding (*see* Am. Compl. ¶¶ 44-52), so *Cocco* is not relevant.

Plaintiffs have adequately stated a claim under the FDCPA for Bayview's debt collection activities taken outside the scope of the foreclosure itself. However, plaintiffs have failed to state a claim under the FDCPA against Knuckles. Accordingly, Bayview's motion to dismiss the FDCPA claims is denied and Knuckels' motion is granted.

## V.    *N.Y. Gen. Bus. Law § 349 Claims Against Bayview and Knuckles*

Defendants next move to dismiss plaintiffs' claim under New York General Business Law § 349, which prohibits "[d]eceptive acts or practices in the conduct of any business." N.Y. Gen. Bus. Law § 349(a). To state a claim under § 349, a plaintiff "must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014); *see also Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 375 (S.D.N.Y. 2010) (listing elements). Defendants argue that plaintiffs failed to assert that the alleged conduct was "consumer-oriented." (Bayview Br. at 12; Knuckles Br. at 9.) Essentially, they argue, the allegations in the complaint exclusively pertain to interactions between plaintiffs, Bayview, and Knuckles, and suggest no broader consumer impact.

27

"To show that the challenged act or practice was consumer-oriented, a plaintiff must show that it had 'a broader impact on consumers at large': 'Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute . . . .'" *Crawford*, 758 F.3d at 490 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 647 N.E.2d 741, 744 (N.Y. 1995)). The consumer-oriented element "has been construed liberally," *see Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 449 (E.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 359 (E.D.N.Y. 2014), but a plaintiff still "must plead and prove injury to the public generally, rather than to himself alone." *Schwartzco*, 60 F. Supp. 3d at 359 (internal quotation marks and citation omitted); *see also MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997) ("[T]he injury must be to the public generally as distinguished from the plaintiff alone."). "This can be established by showing that a defendant's conduct is part of a pattern directed at the public generally." *M&T Mortg. Corp. v. Miller*, No. 02-CV-5410, 2007 WL 3534781, at *2 (E.D.N.Y. Nov. 13, 2007) (internal quotation marks and citation omitted).

Plaintiffs' allegations under § 349 do not meet the foregoing public injury or public impact standard. Plaintiffs allege that Bayview and Knuckles intentionally sent them "multiple

erroneous, fabricated amounts allegedly due and owing." (Am. Compl. at ¶ 37.) Plaintiffs further claim that they offered to pay the alleged debt "if defendants could validate, and or provide a sensible computation of the amounts alleged to be due and owing." (*Id.*) Defendants' alleged actions were exclusively directed at plaintiffs. Plaintiffs fail to allege any "injury to the public generally," *Schwartzco*, 60 F. Supp. 3d at 359, or that defendants' behavior was "part of a pattern directed at the public." *M&T Mortg.*, 2007 WL 3534781, at *2. Plaintiffs' claim under § 349 therefore must be dismissed with prejudice as against both Bayview and Knuckles.[14]

## VI.   *Other State Law Claims*

Plaintiffs brought two other state-law claims against both defendants, the first for invasion of privacy and the second for negligent hiring and supervision. (Am. Compl. ¶¶ 28-33; 41-43.) Plaintiffs, however, appear to have abandoned those claims by failing even to mention the claims in their opposition. As plaintiffs stated in their opposition, the "issue for the court is whether a jury could conclude from evidence on the record that Defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, Fair Credit Reporting Act (FCRA), 15 U.S.C § 1681, New York GBS. Law § 349 Deceptive Acts and Practices

---

[14] Because plaintiffs' § 349 claim fails on other grounds, the court need not reach Bayview's alternative argument that this claim is preempted by the FCRA. (*See* Bayview Br. at 10-11.)

Unlawful (NYGBSL DA&PU), respectively." (Pl. Resp. at 1.) *See Romeo & Juliette Laser Hair Removal, Inc. v. Assam I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . , a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."); *In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig.*, No. 06-CV-643, 2007 WL 2694469, at *6 (S.D.N.Y. Sept. 13, 2007) (recognizing that where a plaintiff's opposition brief in response to a motion to dismiss defends claims only against certain defendants, the plaintiff may be deemed to have "abandoned [the] claims against those defendants" that the plaintiff did not address).

As noted, plaintiffs stated in their opposition that the only disputed issues remaining concern the FDCPA claim, the FCRA claim, and the N.Y. Gen. Bus. Law § 349 claim. (Pl. Resp. at 1.) To the extent that such a statement leaves any uncertainty, though, plaintiffs also provide headings for each claim at issue in their opposition. There is a heading for the FDCPA claim, the FCRA claim, and the § 349 claim. However, there is no heading or mention at all of the invasion of privacy or negligence claims.

Mindful of the plaintiffs' pro se status, however, the court will reach the merits of defendants' motion to dismiss the privacy and negligence claims. As to the invasion of privacy claim, "New York State does not recognize the common-law tort of invasion

of privacy except to the extent it comes within Civil Rights Law §§ 50 and 51." *Augustin v. Capital One*, No. 14-CV-179, 2015 WL 5657365, at *7 (E.D.N.Y. July 27, 2015) (internal quotation marks and citation omitted) *report and recommendation adopted*, 2015 WL 5664510 (E.D.N.Y. Sept. 24, 2015). Those state civil rights statutes provide a cause of action when a person's name or likeness is used for advertising purposes without consent. *See* N.Y. Civ. Rights Law §§ 50-51; see also *McKenzie v. Dow Jones & Co., Inc.*, 355 F. App'x 533, 537 (2d Cir. 2009) (recognizing that the tort of invasion of privacy is "severely limited in New York"). Because nothing in plaintiffs' complaint can be read to suggest claims even remotely within the ambit of the invasion of privacy law (*see* Am. Compl. at ¶¶ 28-33), those claims must be dismissed with prejudice.

As to the negligent hiring claims, plaintiffs allege that Bayview and Knuckles "knew and approve[d] of its incompetent employees and agents, attorney debt collectors, and debt collection agency to whom they sold the alleged debt to, who are involved in debt collection against the Plaintiffs. [Bayview and Knuckles] negligently, wantonly, and/or intentionally hired, trained, retained, or supervised incompetent debt collectors . . . ." (Am. Compl. at ¶ 42.)

In a negligent hiring claim, the "negligence of the employer . . . is direct, not vicarious, and arises from its having

placed the employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in making its decision concerning the hiring and retention of the employee." *Corazzini v. Litton Loan Servicing LLP*, No. 09-CV-0199, 2010 WL 1132683, at *8 (N.D.N.Y. Mar. 23, 2010) (quoting *Sheila C. v. Povich*, 781 N.Y.S.2d 342, 350 (1st Dept. 2004)). In addition to pleading the standard elements of negligence, plaintiffs — to state a claim for negligent hiring, supervision or retention — must allege: "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal quotations marks and citations omitted); *see also Bouchard v. New York Archdiocese*, 719 F. Supp. 2d 255, 261 (S.D.N.Y. 2010) (listing elements of negligent hiring cause of action under New York law). "A cause of action for negligent hiring or retention requires allegations that the employer . . . failed to investigate a prospective employee notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate that prospective employee." *Bouchard*, 719 F. Supp. 2d at 261 (internal quotation marks and citation omitted).

In this case, there is no allegation that either Bayview or Knuckles knew or should have known of *any* employee's propensity for conduct that could have caused plaintiffs' purported injuries. (Am. Compl. at ¶¶ 41-43.) No employees are even named or described in the complaint. *See Povich*, 781 N.Y.S.2d at 350 ("An essential element of a cause of action for negligent hiring and retention is that the employer knew, or should have known, of the employee's propensity for the sort of conduct which caused the injury. Plaintiff's complaint, however, is devoid of any allegations concerning this essential element, or the identity of the employees involved . . . ."). Consequently, plaintiffs have failed to state a claim for negligent hiring against Bayview or Knuckles. The negligent hiring claims are dismissed with prejudice.

## CONCLUSION

For the reasons described above, the court concludes that plaintiffs have: (1) stated a claim under the FCRA against Bayview; (2) stated a claim under the FDCPA against Bayview for debt collection activities unrelated to the foreclosure proceeding; (3) failed to state a claim under the FDCPA against Knuckles because Knuckles is alleged only to have litigated the foreclosure suits; (4) failed to state a claim against either Bayview or Knuckles under N.Y. Gen. Bus. Law § 349; (5) failed to state a claim against either Bayview or Knuckles for invasion of privacy; and (6) failed to state a claim for negligent hiring

against either defendant. Therefore, no claims survive against Knuckles.

The court grants plaintiffs 30 days to amend their complaint to allege plausible facts, if any, against Knuckles for alleged violations of the FDCPA. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (recognizing that a pro se complaint "should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (internal quotation marks, alterations, and citation omitted)).[15] Amendment of the N.Y. Gen. Bus. Law § 349 claims, invasion of privacy claims, and negligent hiring claims would be futile because there is no indication that plaintiffs could state significant plausible facts to sustain those claims. The court, therefore, dismisses the state law claims with prejudice. *See Cancel v. New York City Human Res. Admin./Dep't of Soc. Servs.*, 527 F. App'x 42, 44 (2d Cir. 2013) ("While district courts should generally not dismiss pro se claims without affording leave to amend, it need not do so when amendment would be futile." (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000))). Failure to amend within 30 days will result in the dismissal, with prejudice, of Knuckles. Plaintiffs should title their amended complaint "Second Amended Complaint."

---

[15] Although Plaintiffs have amended their complaint once, that amendment was made only three weeks after the initial complaint was filed and contained no substantive changes.

Plaintiffs are advised that the second amended complaint will not simply add to the most recent amended complaint. Once the second amended complaint is filed, it completely replaces the amended and original complaints. Therefore, it is important that plaintiffs include in the second amended complaint all the necessary information from the amended complaint (with the exception of information relating to claims dismissed with prejudice). The second amended complaint must be captioned "Second Amended Complaint" and bear the same docket number as this memorandum and order. The Clerk of the Court is respectfully directed to serve of a copy of this order on plaintiffs and note service on the docket.

**SO ORDERED.**

_____  __/s/_____
**KIYO A. MATSUMOTO**
United States District Judge

Dated: Brooklyn, New York
       January 22, 2016