UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

DWIGHT A. WILLIAMS and PATRICIA CLARKE,

               Plaintiffs,

                                         **MEMORANDUM AND ORDER**

        -against-                   14-CV-7427 (KAM)(SJB)


BAYVIEW LOAN SERVICING, LLC, and
KNUCKLES, KOMOSINSKI & ELLIOTT, LLP,

               Defendants.

--------------------------------------X

**MATSUMOTO, United States District Judge:**

        On December 22, 2014, *pro se* plaintiffs Dwight A.

Williams and Patricia Clarke ("plaintiffs") commenced an action

against Bayview Loan Servicing, LLC ("Bayview" or "defendant")

and Knuckles, Komosinski & Elliott, LLP ("Knuckles"), claiming

that Bayview and Knuckles employed abusive debt collection

practices, in violation of the Fair Credit Reporting Act

("FCRA"), the Fair Debt Collections Practices Act ("FDCPA"), and

various New York state laws, while attempting to collect on a

purported debt.  (ECF No. 1, Complaint ("Compl.").)  In their

second amended complaint, filed after the court granted in part

the defendants' motions to dismiss as to the state law claims,

plaintiffs alleged that Bayview violated the FCRA and that

Bayview and Knuckles violated the FDCPA.  (ECF No. 26, Second

Amended Complaint ("SAC").)  Currently before the court is

Bayview's motion to dismiss or, in the alternative, for summary judgment.  For the reasons stated below, Bayview's motion is granted.

**BACKGROUND**

The following facts are taken from the parties' Statements of Undisputed Facts Pursuant to Local Rule 56.1, as well as the exhibits cited in and annexed to the parties' motion papers.

**I.   Factual Background**

A. <u>The Notes and Mortgage Loans</u>

On December 14, 2004, Benjamin Beechwood LLC ("BBL") borrowed the principal amount of $269,078 from Fleet National Bank.  The loan is memorialized in a note dated December 14, 2004 (the "2004 Note").  (ECF No. 62-1, Defendant Bayview Loan Servicing, LLC's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1 Statement") ¶ 1.)  As security for the 2004 Note, BBL granted Fleet National Bank a mortgage on property located at 7608 Aquatic Drive, Arverne, New York 11692 ("the property"), dated December 14, 2004 (the "2004 Mortgage").  (*Id.* ¶ 2.)  The 2004 Mortgage was assigned by Bank of America, Fleet National Bank's successor by merger, to CitiMortgage Inc. ("CitiMortgage") by an assignment of mortgage dated October 6, 2006.  (*Id.* ¶ 3.)  Pursuant to a Bargain and Sale Deed dated October 17, 2006, BBL transferred its interest

in the property to plaintiffs Williams and Clarke subject to the 2004 Mortgage. (*Id.* ¶ 4.)

On October 17, 2006, plaintiffs borrowed the principal amount of $195,232 from CitiMortgage. (*Id.* ¶ 5.) That loan is memorialized in a note dated October 17, 2006 (the "2006 Note"). (*Id.*) As security for the 2006 Note, plaintiffs granted CitiMortgage a mortgage on the Property dated October 17, 2006 (the "2006 Mortgage"). (*Id.*) On October 17, 2006, plaintiffs also executed a Consolidation, Extension, and Modification Agreement (the "CEMA"), consolidating the 2004 Note and 2004 Mortgage with the 2006 Note and 2006 Mortgage to form a single lien in the amount of $464,310 ("the Consolidated Loan"). (*Id.* ¶ 6.) In connection with the Consolidated Loan, plaintiffs executed a consolidated note dated October 17, 2006 in the principal amount of $464,310 in favor of CitiMortgage (the "Consolidated Note"). As security for the Loan, the plaintiffs executed a consolidated mortgage encumbering the property, dated October 17, 2006 ("Consolidated Mortgage"). (*Id.* ¶ 7.)

On March 6, 2009, plaintiffs sent CitiMortgage a "Rescission Notice of Promissory Note," attempting to "rescind the Promissory Note executed on October 17, 2006" pursuant to 15 U.S.C. 1635(a) and (b) due to CitiMortgage's "lack of full disclosure." (*See* ECF No. 62-40, Plaintiffs' Opposition and Dispute to Bayview Loan Servicing, LLC's Statement of Undisputed

Material Facts & Plaintiffs' Additional Undisputed Material
Facts ("Pl. 56.1 Statement") at 2, ¶ 12; ECF No. 68-2, Pl. Ex.
2.)  The rescission notice appears to refer to the 2006 Note for
$195,000, rather than the Consolidated Note for $464,310.  (*See*
ECF No. 68-2, Pl. Ex. 2 ("We . . . demand the return of
$195,200.00 for the rescission amount due . . . .).)  Plaintiffs
failed to make their monthly payment that became due on January
1, 2011, and entered default status.  (ECF No. 62-1, Def. 56.1
Statement ¶ 12.)  On May 26, 2011, CitiMortgage notified
plaintiffs that they were "still in default" on the mortgage
loan.  (ECF No. 68-19, Pl. Ex. H.)  CitiMortgage referred the
defaulted loan to Knuckles to begin foreclosure proceedings.
(*Id.*)

Subsequent to plaintiffs' default, the Consolidated
Note and Mortgage were assigned to Bayview and memorialized by
an assignment of mortgage dated September 11, 2013, and recorded
on October 2, 2013.  (ECF No. 62-1, Def. 56.1 Statement ¶ 9.)
The original Notes were also physically transferred and
delivered to Bayview on July 2, 2013.  (*Id.*)  Bayview advised
plaintiffs of the transfer of the Loan by letters dated July 23,
2013 and August 8, 2013.  (*Id.* ¶ 10.)  Bayview did not receive
any inquiry from plaintiffs within 30 days following the
Transfer Letters.  (*Id.* ¶ 11.)

B. First Foreclosure Action

       Plaintiffs failed to make a monthly payment due as required by the Consolidate Note and Mortgage Loan on January 1, 2011. (*Id.* ¶ 12.) At some point between May 26, 2011, and April 23, 2013, CitiMortgage initiated a foreclosure action in the Supreme Court of the State of New York, County of Queens, Foreclosure Part, against plaintiffs, which the Knuckles firm handled. (ECF No. 26, Second Amended Complaint ("SAC") ¶¶ 8-10, Pl. Ex. C at 17.) On April 23, 2011, that action was dismissed without prejudice. (*Id.* Pl. Ex. C at 17.)

C. Second Foreclosure Action

       By letter dated January 13, 2014, Bayview notified plaintiffs that they were in default of the Consolidated Note and the Mortgage Loan, and that failure to remedy the default would result in acceleration. (ECF No. 62-1, Def. 56.1 Statement ¶ 13.) On June 5, 2014, Bayview provided plaintiffs with a 90-day notice pursuant to New York Real Property and Procedures Law ("RPAPL") § 1304, advising plaintiffs, *inter alia*, that they were "1251 days in default." (*Id.* ¶ 14.) No additional default notices were provided to the plaintiffs. (*Id.* ¶ 15.)

       On October 23, 2014, Bayview commenced a foreclosure action against plaintiffs in the Supreme Court of the State of New York, County of Queens (the "Foreclosure Court"), Index No.

707826/2014, entitled *Bayview Loan Servicing, LLC v. TChet Ab Utcha Ra El a/k/a Dwight A. Williams et al.* (the "Foreclosure Action"). (*Id.* ¶ 16.)

On or about November 24, 2014, plaintiffs in this action[1] served Bayview with an "Affidavit of Verified Facts by Defendants in Error." (ECF No. 26, SAC ¶ 16, Pl. Ex. K at 45-47.) The plaintiffs' affidavit demanded that the action be dismissed on the grounds that it was a "false attempt to compel Defendants in error[, i.e. Williams and Clarke,] to answer an alleged claim of debt" and that Bayview's actions were in violation of, *inter alia*, the FDCPA. (*Id.*)

On January 20, 2015, plaintiffs filed an Order to Show Cause in the Foreclosure Action arguing, *inter alia*, lack of standing, lack of capacity, and "defective instrument." (ECF No. 62-1, Def. 56.1 Statement ¶ 18.) By order dated May 1, 2015 and entered on May 15, 2015, the Foreclosure Court found that Bayview submitted sufficient proof to establish its standing. (*Id.* ¶ 19.) Specifically, Bayview had "offer[ed], among other things, a copy of the consolidated note and *allonge*, endorsed by CitiMortgage in blank and without recourse . . . ." (*Id.*) The Foreclosure Court also found plaintiffs' claim that the action should be dismissed based upon a "defective instrument" was

---

[1] Although the plaintiffs in this action were defendants in the state Foreclosure Action, the court will refer to them as plaintiffs in this Memorandum and Order unless otherwise noted.

"insufficient to establish a ground for dismissal." (ECF No. 62-29, Def. Ex. 6 at 3.)

While plaintiffs' Order to Show Cause in the Foreclosure Action was *sub judice*, plaintiffs also filed a motion to dismiss the Foreclosure Action arguing, *inter alia*, that pursuant to *Jesinoski v. Countrywide Home Loans*, 135 S. Ct. 790 (2015), and the Truth in Lending Act ("TILA"), plaintiffs were entitled to rescind the Mortgage Loan. (ECF No. 62-30, Def. Ex. 7, Aug. 31, 2015 Foreclosure Decision & Order ("Aug. 31, 2015 Order"); ECF No. 62-1, Def. 56.1 Statement ¶ 21.) By order dated August 31, 2015, and entered on September 18, 2015, the Foreclosure Court denied plaintiffs' motion with respect to, *inter alia*, plaintiffs' *Jesinoski* argument and found that plaintiffs were not entitled to rescind the Mortgage Loan and had failed to provide evidence of a timely rescission notice. (ECF No. 62-30, Def. Ex. 7, Aug. 31, 2015 Order; ECF No. 62-1, Def. 56.1 Statement ¶ 22.)

On March 31, 2016, Bayview moved for a default judgment in the Foreclosure Action. (ECF No. 62-1, Def. 56.1 Statement ¶ 24.) Plaintiffs cross-moved on April 13, 2016, alleging that the Foreclosure Action should be dismissed because plaintiffs had rescinded the 2006 Note and Mortgage and Bayview thus lacked standing. (*Id.* ¶ 24.) By decision dated July 19, 2016, the Foreclosure Court granted Bayview's motion in part and

denied plaintiffs' cross-motion in its entirety.  (*Id.* ¶ 25.)
On August 16, 2017, Bayview moved again for a default judgment
and an order of reference.  Plaintiffs opposed the motion,
alleging again that they rescinded the Note and Mortgage and
that Bayview lacked standing.  (*Id.* ¶ 26.)

By order dated November 20, 2017 and entered December
29, 2017, the Foreclosure Court granted Bayview's motion for a
default judgment and an order of reference.[2]  (*Id.* ¶ 27.)  The
Foreclosure Court held that Bayview had "made a *prima facie*
showing of entitlements to judgment as a matter of law by
submitting a copy of the subject mortgage, underlying note, and
proof of default."  (ECF No. 62-34, Def. Ex. 11 at 2.)  The
court also found that plaintiffs' opposition contained
"allegations that [were] either directly refuted by [Bayview's]
documentary evidence or [were] insufficient to raise a triable
issue of fact and defeat [Bayview's] motion."  (*Id.*)  Therefore,
the Foreclosure Court appointed a referee to compute the amount
due to Bayview.  (*Id.*)

Bayview subsequently "move[d] for an Order confirming
the referee's report made in accordance with RPAPL 1321,
granting a Judgement of Foreclosure and Sale pursuant to RPAPL

---

[2] Plaintiffs requested intervention from the appellate division regarding this
decision, but they claim that the appeal has been delayed "due to tampering
with evidence by administrators of Queens Supreme Court."  (ECF No. 62-1, Pl.
56.1 Statement at 4, ¶ 25.)

1351, and directing the distribution of sales proceeds pursuant to RPAPL 1354." (ECF No. 66, Apr. 23, 2019 Status Letter from Bayview Regarding State Court Action ("Apr. 23, 2019 Def. Status Ltr."), Ex. A at 5.) Bayview resubmitted the documents it had filed seeking appointment of a referee, along with the sworn report of the referee. (*Id.*) In opposition, plaintiffs "submit[ted] an affidavit[,] which allege[d] that [the state court] and [Bayview's] attorneys ha[d] violated the Constitution of the United States of America, (2) that [the state] court lack[ed] subject matter and in personam jurisdiction over [plaintiffs], and (3) that [plaintiffs] exercised their rights of rescission of the Promissory Note pursuant to 15 U.S.C. 1635 [TILA]." (*Id.*) The Foreclosure Court noted that those arguments by the plaintiffs "ha[d] been found to be without merit in previous decisions of [the state] court." (*Id.*) Moreover, plaintiffs "remain[ed] in default . . . and ha[d] failed to demonstrate any defense to this action." (*Id.*) The Foreclosure Court granted Bayview's motion for a judgment of foreclose and sale in its entirety on April 10, 2019. (*Id.*)

### D. Credit Verification

On or about November 9, 2014, defendant received a notice from the credit reporting agencies that plaintiffs disputed certain information regarding the status of their loan payments. (ECF No. 62-1, Def. 56.1 Statement ¶ 28.) In

response, on November 14, 2014, Bayview provided verification of its investigation and the accuracy of the data in the credit report to Equifax. (ECF No. 62-1, Def. 56.1 Statement ¶ 29; ECF No. 62-4, Affidavit of Myron De Sa in Support of Motion for Summary Judgment ("De Sa Aff.") ¶ 21; ECF No. 62-20, Def. Ex. P.) On or about November 26, 2014, Bayview received a letter from plaintiffs dated November 10, 2014, disputing their debt and demanding verification of it. (ECF No. 62-1, Def. 56.1 Statement ¶ 30; ECF No. 68-21, Pl. Ex. J.) By letter dated November 26, 2014, Bayview informed plaintiffs that it had received plaintiffs' inquiry regarding the Mortgage Loan. (ECF No. 62-3, Affidavit of Chantal Klein in Support of Motion for Summary Judgment ("Klein Aff.") ¶ 5; ECF No. 62-21, Def. Ex. Q.) Then, by letter dated December 29, 2014[3], Bayview provided plaintiffs with documentation verifying that the disputed debt was owed to Bayview and including copies of the Consolidated Note, the CEMA, the Assignment of Mortgage, and the Bayview's August 8, 2013 Transfer of Service Notice letter to plaintiffs.[4] (ECF No. 62-3 Klein Aff. ¶ 6; ECF No. 62-22, Def. Ex. R.)

---

[3] The letter is dated December 29, 2012, but defendant has submitted an affidavit signed by Chantal Klein, a Customer Support Case Manager at Bayview, averring that the date was written in error and the actual date on which the letter was drafted and mailed was December 29, 2014. (ECF No. 62-3, Affidavit of Chantal Klein ("Klein Aff.") ¶¶ 1, 8-10.) Plaintiffs have not directed the court to any evidence disputing this representation.
[4] In the SAC, plaintiffs allege that Bayview never responded to their request for verification and validation or their notice. (ECF No. 26, SAC ¶¶ 13, 16, 22.) However, plaintiffs have not cited to any materials in the record that demonstrate, or otherwise establish, a genuine dispute that Bayview did in

On April 15, 2015, plaintiffs served Bayview with a "Notice of Rescission, Notice of Dispute of Debt." (ECF No. 68-17, Pl. Ex. F.) In their notice, plaintiffs, *inter alia*, advised Bayview that plaintiffs had rescinded the Mortgage Loan "timely and properly" pursuant to 15 U.S.C. § 1635(a) and that "it would be a violation of federal law to proceed relying on the instruments [Bayview] purport[ed] to own." (*Id.* at 2.) Plaintiffs also stated that the "alleged debt is hereby disputed in its entirety, and 'validation,' as well as 'verification' is demanded timely, and consistent with [15 U.S.C.] §1692(g)(1) [and] (2), respectively." (*Id.* at 3.) Plaintiffs have alleged that Bayview nonetheless "failed and/or refused to furnish correct information" regarding the debt to consumer credit reporting agencies. (ECF No. 26, SAC ¶ 22.)

## II. Procedural History

Plaintiffs commenced this federal action on December 22, 2014 against Bayview and Knuckles. (ECF No. 1, Compl.) On January 12, 2015, plaintiffs filed their "First Amended Verified Complaint for Damages." (ECF No. 9, First Amended Complaint.)

Defendants Bayview and Knuckles moved for dismissal of the first amended complaint, which alleged, *inter alia*, that

---

fact provide plaintiffs with verification of their debt. (*See* ECF No. 62-22, Def. Ex. R.) *See* Fed. R. Civ. P. 56(c) (describing procedures for demonstrating dispute of material fact).

Bayview violated the FCRA and that both Bayview and Knuckles violated the FDCPA, New York General Business Law § 349, New York's privacy law, and New York law governing negligent hiring and supervision of employees. (*See generally id.*) The court issued an opinion on January 22, 2016, concluding that plaintiffs failed to state a claim for the non-FCRA and non-FDCPA claims and dismissing those state law claims with prejudice. (ECF No. 23, Memorandum and Order Dismissing Complaint in Part.) The court also concluded that the plaintiffs failed to state an FDCPA claim against Knuckles and dismissed that claim. (*Id.*) Plaintiffs were granted leave to file a second amended complaint, maintaining their FCRA and FDCPA claims against Bayview and attempting to state an FDCPA claim against Knuckles. (*Id.*)

Plaintiffs filed their second amended complaint on February 22, 2016, which renewed their FCRA claims against Bayview and their FDCPA allegations against Bayview and Knuckles, and Knuckles moved to dismiss on July 15, 2016. (ECF No. 35, Second Motion to Dismiss by Knuckles.) The court issued an order on March 31, 2017, granting Knuckles's motion to dismiss with prejudice. (ECF No. 53, Memorandum and Order Dismissing Second Amended Complaint as to Knuckles.)

Bayview filed its motion to dismiss or, in the alternative, for summary judgment on July 25, 2016. (ECF No.

41, Motion to Dismiss or for Summary Judgment.) On March 8, 2017, the court terminated the motion in light of the pending Foreclosure Action determining the validity of the Note and Mortgage Loan. (Dkt. Entry dated Mar. 8, 2017.) The court renewed the motion on March 29, 2018. (Dkt. Entry dated Mar. 29, 2018.) The court issued its order on October 29, 2018. (ECF No. 59, Memorandum and Order Denying Bayview's Motion to Dismiss or for Summary Judgment.) The court denied the motion without prejudice due to defendant's failure to serve *pro se* plaintiffs with a Local Rule 56.2 statement and ordered the parties to attend an in-person conference on November 20, 2018. (*Id.* at 9.) The court subsequently held the conference and discussed the requirements of Federal Rules of Civil Procedure 12 and 56, as well as Local Rules 56.1 and 56.2, with the parties. (*See* Dkt. Entry dated Nov. 20, 2018.)

Bayview again filed a motion to dismiss or for summary judgment on February 22, 2019. For the reasons stated below, the court grants Bayview's motion.

**LEGAL STANDARD**

**I.  Motion for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), "and the facts as to which there is no such issue warrant the entry of judgment for the moving party as

a matter of law." *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "All ambiguities must be resolved in favor of the non-moving party and all permissible inferences from the factual record must be drawn in that party's favor." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). If the moving party can show that "there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Peterson v. Regina*, 935 F. Supp. 2d 628, 634 (S.D.N.Y. 2013) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

To defeat a motion for summary judgment, the non-moving party must identify probative, admissible evidence from which a reasonable factfinder could find in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-257 (1986). It "requires the nonmoving party to go beyond the pleadings and by [his or] her own affidavits, or by the depositions, answers to

14

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." 477 U.S. at 261 n.2 (citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." 477 U.S. at 248. If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (citations omitted). But the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." 477 U.S. at 252.

Where, as here, a party is proceeding *pro se*, the court has an obligation to "read the *pro se* party's supporting papers liberally, and interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, a *pro se* party's "bald assertion, completely unsupported by evidence," is not sufficient to overcome a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## II.  *Res Judicata*

"Under the doctrine of *res judicata*, or claim preclusion, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998) (internal quotation marks omitted)). *See also Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 743 (N.Y. 1970) ("Generally speaking, the doctrine of *res judicata* gives binding effect to the judgment of a court of competent jurisdiction and prevents the parties to an action, and those in privity with them, from subsequently relitigating any questions that were necessarily decided therein.") (internal quotation marks and citation omitted).  "Claim preclusion [also] prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided." *Clarke v. Frank*, 960 F.2d 1146, 1150 (2d Cir. 1992).

"[I]t has long been the law that default judgments can support *res judicata* as surely as judgments on the merits." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 626 (2d Cir. 2007).  *See also Gianatasio v. D'Agostino*, 862 F. Supp. 2d 343, 351 (S.D.N.Y. 2012) ("New York courts have held that a prior default judgment bars a subsequent suit on issues which

16

were or could have been determined in the earlier action.")
(internal quotation marks and citation omitted).

      "In applying the doctrine of *res judicata*, [a court]
must keep in mind that a state court judgment has the same
preclusive effect in federal court as the judgment would have
had in state court." *Burka v. New York City Transit Auth.*, 32
F.3d 654, 657 (2d Cir. 1994). "New York adheres to a
transactional analysis of *res judicata*, barring a later claim
arising out of the same factual grouping as an earlier litigated
claim even if the later claim is based on different legal
theories or seeks dissimilar or additional relief." *Id.*
(internal quotation marks and citation omitted). "New York . .
. does not have any compulsory counterclaim rule[] . . . [and]
[b]ecause New York's counterclaim rule is permissive, *res
judicata* generally will not necessarily bar claims that could
have been counterclaims in a prior action." *Eubanks v. Liberty
Mortg. Banking Ltd.*, 976 F. Supp. 171, 173 (E.D.N.Y. 1997).
"Only a defendant who is silent in the first action and then
tries to bring a second action that would undermine the rights
or interests established in the first action is barred under New
York's *res judicata* rule." *Id.* (internal quotation marks and
citation omitted). "New York ensures that its permissive
counterclaim rule will not result in inconsistent verdicts[.]"
*Id.*

"Although *res judicata* is an affirmative defense that should be raised in the defendant's answer, the district court has the discretion to entertain the defense when it is raised in a motion for summary judgment, by construing the motion as one to amend the defendant's answer." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000). *See also Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 349 (E.D.N.Y. 2010) ("A court may dismiss a claim on *res judicata* or collateral estoppel grounds on a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment.").

## DISCUSSION

I.  **FCRA Claims**

The FCRA, 15 U.S.C. §§ 1681 *et seq.*, "regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information" and "imposes several duties on those who furnish information to consumer reporting agencies." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (citing 15 U.S.C. §§ 1681(b), 1681s-2).

In relevant part, Section 1681s-2 imposes duties upon furnishers of information to investigate credit disputes in accordance with the statute after receiving notice of a dispute from a credit reporting agency ("CRA"). *Nguyen v. Ridgewood*

*Sav. Bank*, 66 F. Supp. 3d 299, 304 (E.D.N.Y. 2014).  Furnishers of credit information have an obligation to: (1) "conduct an investigation with respect to the disputed information;" (2) "review all relevant information provided by the CRA;" (3) "report the results of the investigation to the CRA" within thirty days of learning of the dispute; and, (4) "if the investigation finds that the information is incomplete or inaccurate, report those results to all other CRAs that had received the information." *Ritchie v. N. Leasing Sys., Inc.*, No. 12-cv-4992 (KBF), 2016 WL 1241531, at *17 (S.D.N.Y. Mar. 28, 2016) (citations, alterations, and internal quotation marks omitted).  "Although the Second Circuit has not yet defined the specific contours of a furnisher's investigatory responsibility under [the FCRA], courts both within and outside the Circuit have assumed a reasonableness standard for judging the adequacy of the required investigation." *Jenkins v. LVNV Funding, LLC*, No. 14-cv-5682 (SJF), 2017 WL 1323800, at *10 (E.D.N.Y. Feb. 28, 2017) (citations, alterations, and internal quotation marks omitted).

To prove a claim pursuant to 15 U.S.C. § 1681s-2(b), a plaintiff must demonstrate that the furnisher received notice of a credit dispute from a credit reporting agency and that the furnisher thereafter acted in willful or negligent noncompliance with the statute.  *Markovskaya v. A. Home Mortg. Servicing,*

*Inc.*, 867 F. Supp. 2d 340, 343-44 (E.D.N.Y. 2012) (citation and internal quotation marks omitted).  However, "[w]here a consumer shows only that the furnisher received notice of the dispute from the consumer, but not from a credit reporting agency, no claim is stated."  *Id.* at 343.  Moreover, to maintain a claim under the FCRA, a plaintiff bears the burden of demonstrating "actual damages sustained" as a result of the defendant's activities.  *Casella v. Equifax Credit Information Services*, 56 F.3d 469, 473 (2d Cir. 1995); *Caltabiano v. BSB Bank & Trust Co.*, 387 F. Supp. 2d 135, 141 (E.D.N.Y. 2005).

Construing the second amended complaint liberally, plaintiffs allege that defendant violated the FCRA by failing to comply with the FCRA's investigatory and reporting requirements after being notified that plaintiffs had disputed the debt reported by defendant.  (ECF No. 26, SAC ¶¶ 26-34.) Specifically, plaintiffs allege violations in connection with two separate disputes: (1) plaintiffs' disputes filed with consumer reporting agencies in November[5] 2014 and (2) after plaintiffs directly notified defendant in April 2015 that the debt was void.  (*Id.* ¶¶ 20, 29-30.)  Plaintiffs claim that Bayview's actions constituted willful and negligent noncompliance with the FCRA and caused plaintiffs to "suffer[]

---

[5] The SAC says December, but the cited exhibit refers to November filings. (*See* ECF No. 26, SAC, Ex. I at 35.)

damages that led to multiple denials of credit, loss of
employment opportunities and increased insurance rates" for
which they are "entitled to actual damages for those creditors
who denied Plaintiffs credit based on a deteriorated credit
score and credit worthiness." (*Id.* ¶ 33-34.) Defendant
contends that summary judgment is warranted on plaintiffs' FCRA
claims because defendant conducted a legally sufficient
investigation of plaintiffs' dispute and verified that the
information sent to credit reporting agencies was accurate.
(ECF No. 65, Memo. in Support at 1-2, 12-13.)

With respect to the 2014 dispute, plaintiffs received
a notice of the dispute from the credit reporting agencies on or
about November 9, 2014. Pursuant to the FCRA, Bayview was
required to complete an investigation and report its findings
regarding those disputes within thirty days, or by December 8,
2014. Bayview does not dispute that it received notice from a
CRA triggering its investigatory and reporting requirements.
Based on the evidence before the court, Bayview has sufficiently
demonstrated that it complied with those requirements.

Bayview has submitted affidavits and documentary
evidence establishing that it conducted an FCRA-compliant
investigation and subsequently reported its findings, namely
that Bayview accurately reported plaintiffs' debt, to the credit
reporting agencies. Specifically, Bayview's litigation manager

submitted a sworn affidavit stating that Bayview conducted an investigation after receiving notice that plaintiffs disputed information regarding their payments as to the Mortgage Loan, and stating that Bayview reported its findings to the credit reporting agencies on November 14, 2014. (ECF No. 62-4, De Sa Aff. ¶¶ 20-21.) Attached to that affidavit is a draft version of one such report for Equifax, which is dated November 14, 2014 and indicates that the report was submitted to Equifax on November 19, 2014. (*Id.* ¶ 21; ECF No. 62-20, Def. Ex. P.) Though not required by the FCRA, Bayview has submitted evidence that on December 29, 2014, Bayview mailed plaintiffs verification of the debt, including copies of the Consolidated Note, CEMA, Assignment of Mortgage, and Transfer of Service Notice. (ECF No. 62-4, De Sa Aff. ¶¶ 22-23; ECF No. 62-21, Def. Ex. Q; ECF No. 62-22, Def. Ex. R; ECF No. 62-3, Klein Aff. ¶¶ 5-9.) Moreover, plaintiffs only cite a set of credit reports indicating that their mortgage payments were past due. (ECF No. 62-40, Pl. Ex. 8 at 72-76.) Plaintiffs have not refuted the evidence that Bayview provided demonstrating that it had correctly reported the plaintiffs' default to the credit agencies.

To the extent plaintiffs assert a claim for a violation of the FCRA in connection with their notice to defendant of their direct dispute in April 2015 (*see* ECF No. 26,

SAC ¶¶ 20, 30, Pl. Ex. M at 50), the claim is dismissed.  As

noted above, a consumer fails to state a claim where he or she

only demonstrates that the furnisher received information from

the consumer and not the credit reporting agency.  *Markovskaya*,

867 F. Supp. 2d at 344.  Here, plaintiffs do not provide any

evidence demonstrating, nor do they even allege, that they

informed any credit reporting agencies in April 2015 regarding

the alleged rescission.

  In addition to the above, plaintiffs appear to assert

claims for violations of 15 U.S.C. §§ 1681(b) and 1681e(b),

which pertain to consumer reporting agencies.  (*See* ECF No. 26,

SAC ¶¶ 28-31.)  Because Bayview is a furnisher and not a

consumer reporting agency, those claims are dismissed.

  Accordingly, defendant's motion for summary judgment

with respect to plaintiffs' FCRA claims is granted, and the FCRA

claims are dismissed.

## II. Unpleaded TILA Claim

  Section 1635(a) of the Truth in Lending Act ("TILA"),

15 U.S.C. § 1601 *et seq.*, provides that in a consumer credit

transaction, "the obligor shall have the right to rescind the

transaction until midnight of the third business day following

the consummation of the transaction or the delivery of the

information and rescission forms required under this section

together with a statement containing the material disclosures

required under this subchapter, whichever is later, by notifying the creditor . . . of his intention to do so."  Section 1635(a) further provides that the "creditor shall clearly and conspicuously disclose . . . to any obligor in a transaction subject to [Section 1635] the rights of the obligor under th[e] section."  If the material disclosures discussed in Section 1635(a) are never disclosed to the obligor, the "right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first."  15 U.S.C. § 1635(f).

Plaintiffs allege in the second amended complaint that they rescinded the consolidated note and mortgage under TILA, and they argue the same in their opposition brief.  (ECF No. 26, SAC ¶¶ 20-21; ECF No. 62-39, Opp. at 9-10.)  Plaintiffs claim that they were never provided with material disclosures required under TILA.  (ECF No. 62-39, Opp. at at 2.)  Defendant claims that plaintiffs raised the argument that Bayview violated TILA by failing to provide plaintiffs with the proper disclosure documents for the first time in their opposition to defendant's motion, rather than in their complaint as required.  (ECF No. 62-38, Reply at 2.)

"[I]t is well established that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment."  *Gustavia Home, LLC v. Hoyer*, 362 F. Supp.

3d 71, 82 (E.D.N.Y. 2019) (citing *Skates v. Inc. Vill. of Freeport*, 265 F. Supp. 3d 222, 240 (E.D.N.Y. 2017) (internal quotation marks omitted)). *See also Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (affirming the district court's holding not to consider a claim raised for the first time in a brief in opposition to a motion for summary judgment); *Wilson v. City of New York*, 480 F. App'x 592, 594 (2d Cir. 2012) ("[W]e agree with the district court that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.") (internal quotation marks omitted); *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 408 (S.D.N.Y. 2000) ("[T]his Court will not consider claims not pleaded in the Complaint.").

The court agrees that plaintiffs cannot raise a TILA claim violation for the first time in their opposition brief, but disagree with the defendant's characterization that that is what plaintiffs have done. Plaintiffs assert in their reply that CitiMortgage did not provide them the material disclosures, an allegation made in their second amended complaint by reference to plaintiffs' March 6, 2009 rescission letter. (ECF No. 62-39, Opp. at 2, ECF No. 26, SAC ¶ 7.) Plaintiffs do not appear to argue that Bayview violated TILA by failing to provide material disclosures or that plaintiffs are entitled to damages from Bayview for a TILA violation. Rather, plaintiffs argue

that because they did not receive material disclosures from CitiMortgage, they had a three-year time period in which to rescind the transaction, instead of a three-day time period, and that they exercised their right of rescission on March 6, 2009, within the additional time allotted by the alleged failure to disclose.  Given plaintiff's *pro se* status, and because the allegation that plaintiffs rescinded the transaction affects plaintiffs' other claims, the court considers the allegation and finds, as the Foreclosure Court previously found, that plaintiffs did not establish rescission.

Plaintiffs' assertion that they rescinded the transaction is barred by *res judicata*.  This court should not and will not undermine Bayview's rights that have been established in the Foreclosure Action.  If, as plaintiffs request, this court were to find that Bayview violated the FDCPA by attempting to collect a debt from a transaction that had been rescinded, in contravention of the Foreclosure Court's determination that plaintiffs did not rescind, and that the Consolidated Note and Mortgage were valid, this court would undermine the rights and interests previously determined by the state Foreclosure Court.  The court, therefore, cannot accept plaintiffs' argument that there was a rescission or allow plaintiffs to invoke the alleged rescission as a basis for their claim that Bayview violated the FDCPA.

Furthermore, *res judicata* prevents a party from later raising an issue or defense that could have been or was raised in an earlier action. Plaintiffs raised their rescission argument multiple times in the Foreclosure Action and the Foreclosure Court repeatedly determined that the plaintiffs had not provided evidence of a timely rescission nor established any other defense. (ECF No. 62-30, Def. Ex. 7, Aug. 31, 2015 Order at 3; ECF No. 62-34, Def. Ex. 11 at 2; ECF No. 66, Def's Apr. 23, 2019 Letter, Exhibit A at 5; ECF No. 62-1, Def. 56.1 Statement ¶¶ 21-27.) Plaintiff Williams moved to dismiss the foreclosure complaint pursuant to 15 U.S.C. § 1635(a)-(b) of the Truth in Lending Act ("TILA"). (ECF No. 62-30, Def. Ex. 7, Aug. 31, 2015 Order at 3.) TILA section 1635(a)-(b) allows borrowers an unconditional right to rescind a transaction for three days after consummation of the transaction or three years to rescind a transaction if the lender failed to make certain disclosures required under TILA. (*Id.*) The Foreclosure Court determined that Williams "offer[ed] no evidence that he timely provided [Bayview] with written notice to rescind" and that Williams failed to "make any allegation, or submit any proof, as to the manner in which the TILA's disclosure requirements were violated." (*Id.*) "Under such circumstances, those branches of the motion by [] Williams to dismiss the complaint insofar as asserted [by] him pursuant to 15 U.S.C. § 1635(a) and (b) and to

direct [Bayview] to remit the amount of $195,000.00 to him and
[] Clarke [were] denied."  (*Id.*)  In a subsequent decision
granting Bayview's motion for a judgment of foreclosure and
sale, the Foreclosure Court noted that plaintiffs' allegation
that they had "exercised their rights of rescission of the
Promissory Note pursuant to 15 U.S.C. § 1635" was a
"contention[] . . . found to be without merit."  (ECF No. 66,
Def's Apr. 23, 2019 Letter, Exhibit A at 5.)

        Finally, even absent the deference owed by this court
to the Foreclosure Court under the doctrine of *res judicata*,
this court would independently find that there was no
rescission.  Plaintiffs argue that they rescinded the
transaction via a letter to CitiMortgage on March 6, 2009.  The
letter states that it is a "notice that . . . Dwight A. Williams
& Patricia Clarke[] rescind the Promissory Note executed on
October 17, 2006 . . . ."  (ECF No. 68-2, Pl. Ex. 2 at 2.)
Plaintiffs "demand[ed] the return of $195,000 for the rescission
amount due . . . ."  (*Id.*)  As a preliminary matter, a
rescission of a transaction under TILA involves the return of
"any money or property given as earnest money, down payment, or
otherwise" by an obligor to a creditor and the complementary
return of property or the property's reasonable value to the
creditor.  15 U.S.C. § 1635(b).  Here, although plaintiffs'
rescission letter sought to rescind the 2006 promissory note, it

did not seek the return of any money or property paid by the plaintiffs, but instead demanded payment in the amount of $195,000, which had already been extended to plaintiffs in the 2006 transaction.

Regardless, the court finds that plaintiffs did not effectively rescind the consolidated mortgage and note that was the subject of the foreclosure proceedings. Plaintiffs referred to a promissory note executed on October 17, 2006 and demanded the return of $195,000 in their rescission letter. (ECF No. 68-2, Pl. Ex. 2 at 2.) Plaintiffs executed a note on that date for a loan in the principal amount of $195,232, the 2006 Note, which the court considers to be the note referred to in the rescission letter. (ECF No. 62-9, Def. Ex. E.) But the plaintiffs' default and mortgage foreclosure were based on a separate Consolidated Note and Consolidated Mortgage with a principal amount of $464,310.

In the presence of a notary, plaintiffs signed a Consolidation, Extension and Modification Agreement ("CEMA"), in which they "agree[d] to take over all of the obligations under the Notes and Mortgages as consolidated and modified by [the CEMA]." (ECF No. 62-11, Def. Ex. G. at 4-5, 37.) The total unpaid principal balance of the two notes that were consolidated into the Consolidated Note was $464,310. (*Id.* at 5.) Plaintiffs agreed that by signing the CEMA, they and the lender

were "combining into one set of rights and obligations all of
the promises and agreements stated in the Notes and Mortgages."
(*Id.*)  Plaintiffs also agreed in the documents they signed that
the terms of the notes and mortgages would be changed and
restated to be the terms of one Consolidated Note and one
Consolidated Mortgage.  (*Id.* at 5.)

The Consolidated Note and Mortgage incorporated an
October 17, 2006 mortgage securing a note with an unpaid
principal balance of $195,232 and a December 14, 2004 mortgage
securing a note with an unpaid principal balance of $269,078.
(*Id.* at 6.)  In the Consolidated Note, plaintiffs agreed that
"[i]n return for a loan that [they] ha[d] received, [they]
promise[d] to pay [to CitiMortgage] U.S. $ 464,310 . . . ."
(*Id.* at 8; *see id.* at 10 for the signature page.)  The
Consolidated Mortgage stated that the "note signed by Borrower
and dated October 17, 2006 . . . shows that [plaintiffs] owe[d]"
$464,310.  (*Id.* at 2; *see id.* at 34 for notarized signature
page.)

There is no evidence that plaintiffs rescinded the
Consolidated Note and Mortgage for which they owed $464,310,
and, even assuming that plaintiffs did not receive the required
TILA disclosures, the time to rescind under 15 U.S.C. 1635 ended

on October 17, 2009 at the latest.[6]  For all the reasons

discussed, the court holds that plaintiffs did not rescind the

Consolidated Note and Consolidated Mortgage under TILA.

## III.  FDCPA Claims

The FDCPA, 15 U.S.C. §§ 1692 *et seq.*, was enacted "to

eliminate abusive debt collection practices by debt collectors,"

*Sykes v. Mel S. Harris Assoc. LLC*, 780 F.3d 70, 82 (2d Cir.

2015) (citing 15 U.S.C. § 1692(e)), and to ensure that "those

debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged," *Jacobson v.

Healthcare Financial Servs., Inc.*, 516 F.3d 85, 89 (2d Cir.

2008) (internal quotation marks omitted).  Plaintiffs allege

violations of various sections of the FDCPA in their second

amended complaint.

As a preliminary matter, "[t]here is . . . no

conceptual reason for [plaintiffs] to have" raised their FDCPA

claims in the Foreclosure Action because "[s]uch claims

---

[6] Plaintiffs alleged in the Second Amended Complaint that they had served a notice of rescission on Bayview on April 15, 2015.  (ECF No. 36, SAC ¶¶ 20-21; *see also* ECF No. 68-17, Pl. Ex. F at 2-3 (claiming that the loan was rescinded already and demanding "$195,000 for the rescission amount due").) To the extent plaintiffs are attempting to assert a TILA claim based on the April 2015 notice, that claim must fail because the time to rescind had expired over five years before, in October 2009.  Plaintiffs also cite *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S.Ct. 790 (2015) in support of their claim that their notice letter was sufficient to rescind the transaction (ECF No. 62-39, Opp. at 6.), but *Jesinoski* merely stands for the proposition that a borrower can exercise his rescission right by providing written notice without also filing a lawsuit regarding the rescission. Moreover, the state Foreclosure Court considered and rejected plaintiffs' *Jesinoski*-based rescission arguments.

challenge the method of debt collection, not the underlying debt." *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 175 (E.D.N.Y. 2013).[7]  But to the extent that plaintiffs' claims are based on their allegation that they rescinded, those claims fail based on *res judicata* and the court's independent determination that there was no rescission.  The court considers each of plaintiffs' FDCPA claims without consideration of plaintiff's unsuccessful rescission.

### A. 15 U.S.C. § 1692a

Section 1692a of the FDCPA defines terms used throughout the statute, rather than providing causes of action under the act.  Section 1692a(4) defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but . . . does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  Section 1692a(6) defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who

---

[7] Plaintiffs did, in fact, raise FDCPA claims in the Foreclosure Action. (*See* ECF No. 62-31, Def. Ex. 8, Notice of Cross Motion for Relief from Judgment or Order & Post-Trial Motion for Judgment ¶¶ 25-33.)  The Foreclosure Court did not address these claims, denying the damages plaintiffs claimed they were entitled to for the FDCPA violations and stating that they "ha[d] not interposed any counterclaim for affirmative relief."  (ECF No. 62-32, Def. Ex. 9 at 5.)

regularly collects or attempts to collect, directly or
indirectly, debts owed or due or asserted to be owed or due
another."

Plaintiffs allege in the second amended complaint that
Bayview "violated [Section] 1692a(4) by misrepresenting
themselves as a mortgage servicer, when in fact they were
engaged in the attempt to collect a debt."  (ECF No. 26, SAC
¶42a; *id.* at 19-22 (citing the July 23, 2013 notice of transfer
of the mortgage loan to Bayview).)  Plaintiffs also argue that
"BLS cannot have it both ways, claim[ing] to be a mortgage
servicer out of the reach of the FDCPA, yet communicat[ing] with
plaintiffs in the capacity of debt collector pursuant to
[Section] 1692a(6) . . . ."  (*Id.* ¶ 39.)  Plaintiffs "dispute
[Bayview's] alleged fact of a loan transfer . . . as this course
of action is a violation of [Section] 1692a(4)[.]"  (ECF No. 62-
39, Opp. at 4.)

Contrary to plaintiffs' allegations regarding
Bayview's status as a mortgage servicer, Bayview has not argued
that it is out of the reach of the FDCPA.  And an entity may be
both a mortgage servicer and a debt collector.  *See Zirogiannis
v. Seterus, Inc.*, 221 F. Supp. 3d 292, 302 (E.D.N.Y.
2016), *aff'd,* 707 F. App'x 724 (2d Cir. 2017) ("A mortgage
servicer is a 'debt collector' within the meaning of the FDCPA
if the mortgage was in default at the time the servicer began

servicing the debt.")  The January 13, 2014 notice of default

Bayview sent to plaintiffs clearly states that "Bayview Loan

Servicing, LLC is a debt collector and that [the letter] is an

attempt to collect a debt."  (ECF No. 62-17, Def. Ex. M at 5.)

Finally, nothing in Section 1692a(4) suggests that

CitiMortgage's transfer of the loan to Bayview was unlawful.

### B. 15 U.S.C. § 1692d, Harassment or abuse

Section 1692d of the FDCPA states that "a debt

collector may not engage in any conduct the natural consequence

of which is to harass, oppress, or abuse any person in

connection with the collection of a debt."  Examples of

activities violating this section include the "use or threat of

use of violence or other criminal means to harm the physical

person, reputation, or property of any person" and "use of

obscene or profane language or language the natural consequence

of which is to abuse the hearer or reader."  *Id.* at 1692d(1)-

(2).

Plaintiffs merely allege that Bayview violated this

section "by engaging in conduct [of which] the natural

consequence[] . . . is to harass, oppress, or abuse any person

in connection with the collection of an alleged debt, the

attempt to collect an alleged debt relying upon a void

instrument."  (ECF No. 26, SAC ¶ 42b.)  Plaintiffs do not

further elaborate on this conclusory claim in their opposition

brief.  Plaintiffs neither plead facts nor present evidence to

support this claim and "courts 'are not bound to accept as true

a legal conclusion couched as a factual allegation.'" *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Consequently, the

court dismisses plaintiffs' Section 1692d claim.

### C. 15 U.S.C. § 1692e, False or misleading representations

Section 1692e states, in relevant part, that a "debt

collector may not use any false, deceptive, or misleading

representation or means in connection with the collection of any

debt," and lists examples of conduct that specifically violates

the statute.  The subsections plaintiffs allege that Bayview

violated are:

- 1692e(2)(a): The false representation of the character, amount, or legal status of any debt (ECF No. 26, SAC ¶ 41.)

- 1692e(8): Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed (ECF No. 26, SAC ¶ 42c.)

- 1692e(10): The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer  (ECF No. 26, SAC ¶ 41.)

In their opposition, plaintiffs argue that the January

13, 2014 default notice violated Section 1692e because it

contained language threatening potential acceleration of the debt and pursuit of foreclosure if plaintiffs failed to cure the default.  (ECF No. 62-39, Opp. at 1-3, 9.)

"[W]hether a communication is false, deceptive, or misleading . . . is determined from the perspective of the objective least sophisticated consumer" and a communication "can be deceptive if [it is] open to more than one reasonable interpretation, at least one of which is inaccurate." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018) (citation and internal quotation marks omitted).  This standard "pays no attention to the circumstances of the particular debtor in question . . . [and] the operative inquiry . . . is whether the hypothetical least sophisticated consumer could reasonably [mis]interpret the . . . [statement] . . . ." *Easterling v. Collect, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012).  The least sophisticated consumer "lacks the sophistication of the average consumer and may be naïve about the law, but is rational and possesses a rudimentary amount of information about the world." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (citing *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010)).

The Second Circuit has required that "the least sophisticated consumer standard encompasses a materiality requirement; that is, statements must be materially false or

misleading to be actionable under the FDCPA." *Cohen*, 897 F.3d at 85 (2d Cir. 2018). "[C]ommunications . . . that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012). "By contrast, 'mere technical falsehoods that mislead no one' are immaterial and consequently not actionable under § 1692e." *Cohen*, 897 F.3d at 86.

Regarding Section 1692e(2)(a), plaintiffs allege that Bayview violated this section by proceeding with debt collection efforts despite being presented with "a genuine material fact that they were relying upon a void instrument." (ECF No. 26, SAC ¶ 41.) But the plaintiffs cannot dispute the legal status of the debt by claiming, as an established fact, that the note and mortgage were void because of a past rescission. Other than their own assertions and March 6, 2009 letter, for which they cannot prove service or even attempted delivery, the plaintiffs provide no evidence or allegations regarding how the default notice falsely represented the character, amount, or legal status of the debt. Moreover, the least sophisticated consumer would not be misled by the default notice reflecting Bayview's position as to the status of the debt and his or her options for responding to or disputing the debt collection. The January 13,

2014 default notice clearly stated the various options available to plaintiff.  (ECF No. 62-17, Ex. M.)  It included the amount plaintiffs would have to pay to cure the default and the date by which plaintiffs would be able to do so.  (*Id.* at 2.)

The notice explained that if the plaintiffs did not pay the total amount due, they would have the right to assert the nonexistence of a default or any other defense during a foreclosure proceeding.  (*Id.* at 2-3.)  The notice also offered plaintiffs the opportunity to learn more about consumer assistance programs that could help them resolve delinquencies and avoid foreclosure.  (*Id.* at 3.)  And the defendant's notice also provided a phone number plaintiffs could call to dispute the delinquency or the delinquency amount.  (*Id.*)  Even if the letter contained an error regarding one of these options, an allegation plaintiffs have not made, the error still would have to be material to violate the FDCPA.  The plaintiffs have not identified any material falsehood, other than to disagree whether they owed the debt at all.  Accordingly, plaintiff's claim under Section 1692e(2)(a) is dismissed.

Plaintiffs allege that Bayview violated Section 1692e(8), which they claim "requires debt collectors to communicate the disputed status of a debt if the debt collector 'knows or should know' that the debt is disputed[.]"  (*Id.* ¶ 42c.)  Plaintiffs also claim Section 1692e(8) is a "standard

[which] requires no notification by the consumer, written or oral, and instead, depends solely on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is 'acquired[.]'" (*Id.*) Section 1692e(8) actually states that "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" is a violation of the statute.

Plaintiffs' claim under Section 1692e(8) lacks factual support and merely alleges in conclusory fashion that Bayview violated the statute. Plaintiffs do not identify a communication or threat of communication by Bayview to any person regarding information about plaintiffs' credit that was false or which Bayview should have known was false. Plaintiffs' Section 1692e(8) claim is, therefore, dismissed.

Regarding Section 1692e(10), plaintiffs allege that Bayview violated this section by proceeding with debt collection efforts despite being presented with "a genuine material fact that they were relying upon a void instrument." (ECF No. 26, SAC ¶ 41.) Plaintiffs further argue that Bayview violated this section by using "false affidavits of service" and claim that someone known as "Tchet Ab Utcha Ra El" was served on plaintiffs' behalf in the state Foreclosure Action. (ECF No.

62-39, Opp. at 2, 5, 9.)  As stated previously, plaintiffs have merely disagreed whether they owed a debt at all, and they have not established a material falsehood based on the default notice.  Plaintiffs' claims regarding improper service should have been addressed on appeal in state court.  Even so, the state court record reveals that plaintiffs were named defendants in the Foreclosure Action (ECF No. 62-25, Def. Ex. 2) and that they were active litigants.[8] (*See* ECF No. 66, Apr. 23, 2019 Def. Status Ltr., Ex. A at 5.)  The Foreclosure Court itself cited an affidavit of service by a licensed process server as "prima facie proof of proper service upon [plaintiff] Williams . . . ." (ECF No. 62-30, Def. Ex. 7, Aug. 31, 2015 Order at 3.)  The evidence undermines plaintiffs' claim that Bayview served an improper party as a deceptive means of collecting the debt in violation of Section 1692e(10).  The plaintiffs' Section 1692e(10) claim is dismissed.

### D. 15 U.S.C. § 1692g, Validation of debts

Section 1692g(a) sets out the information that should be provided to a consumer in the initial communication from a debt collector in connection with the collection of any debt. The statute provides "that when an independent debt collector

---

[8] Although plaintiffs brought and opposed motions, they were considered to be in default because they did not timely answer the complaint or move to dismiss, and they did not offer an excuse for their failure to do so.  (*See* ECF No. 62-30, Def. Ex. 7, Aug. 31, 2015 Order; ECF No. 66, April 23, 2019 Def. Letter, Ex. A at 5.)

solicits payment it must provide the consumer with a detailed

validation notice[, which] must include the amount of the debt,

the name of the creditor, a statement that the debt's validity

will be assumed unless disputed by the consumer within 30 days,

and an offer to verify the debt and provide the name and address

of the original creditor, if the consumer so requests." *Russell*

*v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996).

Section 1692g(b) provides that if the debt collector

is notified of a dispute within the 30-day window described in

Section 1692g(a), "the debt collector shall cease collection of

the debt, or any disputed portion thereof, until the debt

collector obtains verification of the debt or a copy of a

judgment . . . and a copy of such verification or judgment . . .

is mailed to the consumer by the debt collector."

Plaintiffs allege that they served Bayview "with a

notice of dispute in compliance with 15 U.S.C. § 1692g(a)-(b) in

November 2014 and April 2015 upon notice of [plaintiffs']

private right of action in rescinding the promissory note."

(ECF No. 26, SAC ¶ 41.)  The plaintiffs' November 10, 2014

letter "respectfully demand[s] verification and or validation of

any alleged debt pursuant to 15 USC § 1692g[.]"  (ECF No. 62-40,

Pl. Ex. J at 15.)  The plaintiffs' April 15, 2015 letter

disputes the debt on the basis that the transaction was

rescinded and demands "validation, as well as verification . . .

consistent with § 1692(g)." (ECF 62-40 ¶ 13; ECF No. 68-17, Pl. Ex. F at 1-2.) In their opposition, plaintiffs dispute the validity of their debt and suggest that it cannot be verified, citing their 2009 rescission letter (ECF No. 62-39, Opp. at 11) and CitiMortgage's failed foreclosure attempt (*id.* at 4).

"The FDCPA does not offer a definition of initial communication." *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017). Regardless of whichever of the defendant's communications the court could consider as an initial communication, plaintiffs have not demonstrated that they timely disputed and sought validation for their debt within the 30-day window provided by the statute. Bayview's first communication with the plaintiffs occurred on July 23, 2013, when it announced that it had acquired the servicing rights to plaintiffs' debt. (ECF No. 62-15, Def. Ex. K.) Bayview's default notice was issued to plaintiffs on January 13, 2014. (ECF No. 62-17, Def. Ex. M.) Bayview's foreclosure letter was issued on June 5, 2014. (ECF No. 62-18, Def. Ex. N.) Plaintiffs' proffered letters disputing the debt are dated November 10, 2014 and April 15, 2015, well outside the 30-day window.

Plaintiffs also cannot claim that the filing of the foreclosure complaint on October 23, 2014 was an initial communication under Section 1692g(a). *See* Section 1692g(d) ("A communication in the form of a formal pleading in a civil action

42

shall not be treated as an initial communication for purposes of subsection (a).")._ Regardless, Bayview acknowledged plaintiffs' verification request and verified the debt by providing plaintiffs with a copy of the Consolidated Note, CEMA, Assignment of Mortgage, and Transfer of Service Notice. (ECF No. 62-4, De Sa Aff. ¶¶ 22-23; ECF No. 62-21, Def. Ex. Q; ECF No. 62-22, Def. Ex. R; ECF No. 62-3, Klein Aff. ¶¶ 5-9.)

Because neither of plaintiffs' purported notices of dispute was timely filed in response to a communication from Bayview, Bayview is entitled to summary judgment on the Section 1692g claim.

### E. 15 U.S.C. § 1692f, Unfair practices

Section 1692f states that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." The section contains a non-exhaustive list of conduct that violates the statute. One such violation is the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1).

Plaintiffs allege that Bayview used unfair or unconscionable means to collect or attempt to collect a debt in violation of this section because they "continued in their efforts to foreclose and collect on an alleged debt they knew

43

was not valid and void" despite being "aware of the action of the rescission of the promissory note in March 2009." (ECF No. 26, SAC ¶ 42d.) Neither party addresses this claim in their briefing.

Plaintiffs have not offered evidence that Bayview used any improper means of collecting the debt. They do not, for example, present evidence, much less argue, that Bayview tried to collect more than they were entitled to under the Consolidated Note and Consolidated Mortgage. Rather, they allege that the note was void because it was rescinded. Because rescission is the sole basis for plaintiffs' claim and plaintiffs cannot rely on their rescission allegation, defendant is entitled to summary judgment on plaintiffs' Section 1692f claim.

F. 15 U.S.C. § 1692c(a)

Section 1692c(a) states that "[w]ithout the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt" under three circumstances. The circumstances are 1) if the communication occurs at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer (*id.* at § 1692c(a)(1)), 2) when the consumer has legal counsel (*id.* at § 1692c(a)(2)), or

3) at the consumer's place of employment if the debt collector knows or has reason to know that the employer prohibits the consumer from receiving such communication (*id.* at § 1692c(a)(3)).

Plaintiffs reference Section 1692c in the Second Amended Complaint, but do not make any factual allegations or provide evidentiary support that could sustain an alleged violation of this section. (*See* ECF No. 26, SAC ¶ 40.) Plaintiffs, however, allege in their opposition brief that Bayview "attempted to communicate with [plaintiffs] on multiple occasions without their prior consent or permission from a court of competent jurisdiction in an attempt to collect an unlawful debt." (ECF NO. 62-39, Opp. at 1, 8, 10.) Plaintiffs claim that the January 13, 2014 notice of default specifically violated this section of the FDCPA. (*Id.* at 11.)

Plaintiffs do not offer any evidence that Bayview communicated with them under the three circumstances listed by the statute and, therefore, cannot prove that Bayview violated the statute by sending the notice of default without their permission or permission from a court. Defendant is entitled to summary judgment on plaintiffs' 1692c(a) claim.

**CONCLUSION**

For the foregoing reasons, the court grants in its entirety defendant's motion to dismiss or, in the alternative, for summary judgment. The Clerk of Court is respectfully directed to enter judgment in favor of the defendant, serve the plaintiffs with a copy of this Memorandum and Order and the judgment, note service on the docket, and close the case.

**SO ORDERED.**

Dated:     May 30, 2019
           Brooklyn, New York

                                    _____/s/_____
                                    **HON. KIYO A. MATSUMOTO**
                                    United States District Judge
                                    Eastern District of New York